**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | |
| | : | Case Number: 19-cr-00350 |
| **GARY LEE PEKSA** | : | |
| | : | Detention Hearing: October 22, 2019 |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
**PRETRIAL DETENTION OF DEFENDANT GARY LEE PEKSA**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Gary Lee Peksa be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A), because the offense involved a crime of violence and because there is no condition or combination of conditions that will reasonably assure the safety of any person and the community. The defendant has been indicted by a Grand Jury in the District of Columbia on two counts of Receipt of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2), and one count of Accessing Child Pornography with Intent to View in violation of Title 18 United States Code Sections 2252(a)(4)(B). An analysis of the factors set forth in 18 U.S.C. § 3142 below leads to the conclusion that detention is appropriate.

**FACTUAL BACKGROUND**

Beginning around October 11, 2018, the Library of Congress ("LOC") network security operations center ("SOC") notified investigators of web traffic on the LOC public wireless access system ("LOC guest WiFi"), triggering alerts of internet browsing associated with keywords, definitions, and terms frequently related to child pornography and the sexual exploitation of

1

children. These logs, which United States Capitol Police ("USCP") Special Agent ("SA") Kathryn Rivera has reviewed, recorded the dates and times, IP addresses, and specific identifying numbers/information associated with the connecting device for each time the alert was triggered. Logs of connections to the LOC guest WiFi resolved to an Android Device, most likely with Verizon service, in light of some of the specific Uniform Resource Locators ("URL") recorded in the logs.[1] Subsequent investigation revealed that the Defendant had an Android Device with the same identifying information that was captured by the logs, and that his Internet Service Provider ("ISP") was Verizon.

The logs indicate that several of the connections occurred at approximately 5:30 a.m.. The LOC buildings are not accessible to the public until 6:30 a.m.. Only three populations access the LOC buildings during non-standard business hours: USCP personnel, Architect of the Capitol ("AOC") employees, and LOC employees with unique job requirements. The Defendant was an employee of the AOC, working as a sheet metal mechanic. Through badge access entry logs, surveillance camera footage, and physical observation, SA Rivera was able to place the Defendant near the WiFi access points that were sending the various alerts, indicating that a user was accessing the public WiFi system to view images and videos depicting pornography, contemporaneously with when the alerts were received.

As mentioned above, the logs also tracked the various internet URLs, or web addresses, which reflect the internet browsing activity attributed to the Defendant's Android Device. Investigators successfully downloaded 1,117 of the 1,413 indicated files and calculated MD5 and

---

[1] A Uniform Resource Locator (URL), colloquially termed a web address, is a reference to a web resource that specifies its location on a computer network and a mechanism for retrieving it. A typical URL could have the form http://www.example.com/index.html, which indicates a protocol (http), a hostname (www.example.com), and a file name (index.html).

SHA256 digests ("hash values") for each of the files. These files were sent to the National Center for Missing and Exploited Children, which identified some of the images as previously identified and/or belonging to a "known series" of victims. Visual review of the images captured by law enforcement revealed that many of images and videos depict prepubescent children, fully nude, being sexually assaulted by adult men.

The WiFi access logs collected and painstaking reviewed by law enforcement are thousands of pages long. It must be noted that for any given day, these logs show that the Defendant accessed the WiFi at his place of employment and accessed thousands of different websites. A shocking number of the log entries captured, and tied to the Defendant, reveal that they are sexually explicit in nature, and that they cater to those with a sexual interest in children. These logs show that the Defendant appeared to spend the majority of his work day, sometimes starting as early as 5:30 in the morning and continuing toward the end of his work day at 2:00 p.m., accessing graphic websites featuring the sexual abuse of children. As one example, below is a small excerpt of log records showing exactly what the Defendant was doing when he accessed the public internet at the Library of Congress on November 5, 2018:

| Date/Time | IP | Domain | URL |
|---|---|---|---|
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Realy-tight-teen.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Friend-s-daughter.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/little.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Very-Hot-Teen.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/stolen.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Angel-s-Little-Pussy.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Cum-on-little-ass.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Nudist-contest.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Forced-to-anal-sex.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Very-Hot-Young-Blonde-on-Cam.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Daughter-1.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Young-teen-hard-banged.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | adsco.re | http://adsco.re/ |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Naughty-young-blonde-doll.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Very-hard-fucking-teen.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Penetrating-an-asian-teen.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/young-gf-forced-to-groupsex.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Her-man-comes-in-when-his-daddy-fucks-h |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/EXGF-Handjob.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Ban-video-1.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/upskirt-killer-pussy-in-public.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/nudism.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Mom-teaches-her-daugter-16.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | popads.net | http://serve.popads.net/c?r=1541425015&v=3&siteId=2490178&minBid=&popundersPerIP=&blockedCo |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/best/0113.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Ban-video-2.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Who-s-your-daddy.jpg |
| Mon Nov 5 08:22:40 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/best/niece-dirty-talk.jpg |
| Mon Nov 5 08:22:35 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/new/Cum-spray.jpg |
| Mon Nov 5 08:22:35 2018 | 172.31.0.20 | animalpornvideo.net | http://io0061i1li1l1i00.animalpornvideo.net/bestvids/best/its-ok-dad.jpg |

The evidence collected during the course of this investigation revealed that the Defendant was not only accessing and downloading child pornography at work, but that he was consistently doing so using his laptop computer in his home. Review of information received from Atlantic Broadband pursuant to a court order authorizing the installation of a Pen Register and Trap and Trace device ("PRTT") for the residence's broadband internet connection, revealed records of communications between the residence and numerous IP addresses confirmed to host sites allowing individuals to access, view, and download child pornography.[2] These sites include migel.com, i1iilo0.qc, thebest18-20.top, 18yoteen.com and endteen.com. Specifically, the records showed communications between the residence and the IP address for migel.com, 31.148.99.24, on the evening of Monday, April 22, 2019, at a time when the Defendant would not be expected to be at work. According to commercial records of DNS activity, only one other domain was hosted

---

[2] PRTT data contains only timestamped IP address and port information, not complete URLs which would identify the specific content visited.

by IP address 31.148.99.24 on that date.[3]  PRTT records also showed communications between the residence and the IP address for i1iilo0.qc.to, 188.213.134.141, on April 19, 2019. According to commercial records of DNS activity, i1iilo0.qc.to was the only domain hosted by IP address 188.213.134.141 on April 19, 2019. PRTT records also showed communications between the residence and the IP address for thebest18-20.top, 104.28.116.213, on April 19 and 23, 2019. Comparison of network log information from the LOC for April 29, 2019, which has been linked to the Defendant, and the PRTT data revealed over 160 records of communications from the Defendant's residence to five of the same IP addresses, which provide individuals with images and videos depicting children being sexually exploited, visited using the WiFi at the LOC and the Defendant's Android cellular phone.

On July 29, 2019 the Defendant agreed to speak with SA Rivera.  This interview was recorded and, before questioning began, SA Rivera advised the Defendant of his *Miranda* warnings.  During this interview, the Defendant revealed that he utilizes his cell phone to connect to three WiFi networks while at work as an AOC sheet metal mechanic. He admitted that, while connected to the LOC guest WiFi, AOC WiFi, and AOC TV WiFi, he routinely navigated to a known site called "teen gate" to look at sexually explicit pictures because he likes "young teen girls." The Defendant further admitted to intentionally looking for and viewing children, between the ages of twelve to fourteen, who are either fully nude or who are engaging in sexual intercourse. He further stated that he looks for rooms/spaces at his place of employment that are private –

---

[3] While the correlation between IP addresses and domain names is not always one to one (a single IP address can be used to host many domains (websites)), in the context of this investigation the pattern of repeated accesses to IP addresses hosting child pornography is consistent with attempts to access this material by the Defendant from both the LOC network and his home.

meaning that they have doors that lock - so that he can masturbate while viewing the disturbing images of children being sexually assaulted. In fact, he admitted that he does so on a daily basis.

During this interview, the Defendant admitted that he knows that he is "breaking the law" by "looking at" child pornography, yet he continues to do so. He described his actions as an addiction, similar to smoking cigarettes. The Defendant also admitted that his viewing habits had gotten "progressively worse", meaning that he has been viewing images and videos that depict the abuse of younger children on a more frequent basis. His statements also indicated that he possesses a certain level of technical sophistication and that he has taken steps to actively evade law enforcement detection by installing a security "buffer" he downloaded, which clears his internet search and browsing history.

The Defendant's cell phone was seized pursuant to a search warrant. Review of information received from a forensic exam of the cell phone revealed approximately 100 photo files that are easily recognized as child abuse material. An additional 95 files were marked as "child exploitative", but the age of the children was not easily determined. All 195 of these images are in the unallocated space of the phone. The following describes a few of these images which were located on the Defendant's Android Device:

    a. A nude adult male sitting on a bench leaning back with one foot on a bed and an approximately two-year-old topless female sitting on the edge of the bed between the adult male's legs, holding his erect penis towards her open mouth.

    b. A white female who is approximately 1-year-old wearing a purple parka holding an adult erect penis in her right hand with the head of the penis in her mouth.

    c. A white female who is approximately 4-years-old laying on her back wearing only a pink top which is pushed up above her belly button, she has her legs spread and an unidentified person is inserting a large flesh colored artificial penis shaped device into the underage female's vagina. The underage female appears to be crying.

    d. A white female who is approximately 5-years-old laying on her back in a partially filled bath tub wearing no clothes, with her legs spread, and she is using her fingers to fully expose her genitalia.

    e. A white female who is approximately 5-6 years of age who is completely nude sitting on the lap of an unidentified white male, who has an erect penis which is vaginally penetrating the underage female.

    f. Two white females approximately 6-7 years of age sitting on a sofa, the female on the left is clothed and is holding a white cylindrical object on the sofa, while the second underage female, who is completely nude, is squatting on the sofa while being vaginally penetrated by the cylindrical object.

The images that support Counts One and Two of the Indictment, the Receipt of Child Pornography, were also found on the Defendant's Android Device. The hash value of these images matches the hash value obtained after SA Rivera reviewed specific entries found in the LOC WiFi access logs that are tied to the Defendant's Android Device. These images can be described as follows:

    a. "Naughty-young-blonde-doll.jpg" – This image depicts a young, prepubescent girl, between the ages of five and six, lying on her back. She is mostly nude, with the

    exception of knee-high white socks. Her legs are spread and she is seen inserting an object into her vagina.

    b. "Cum-spray.jpg" – This image depicts a young, prepubescent girl, who is probably around four years old. She is lying on her back with a vacant stare. An adult male is pushing his erect penis against the child's mouth.

The Defendant's residence was also searched pursuant to a warrant, and a laptop was recovered. Forensic analysis revealed approximately 215 images depicting minors engaging in sexually explicit conduct on the laptop – including files that show they were accessed using various media playing programs. There were over 200 files that were marked as "child exploitative", but the age of the children was not easily determined. The majority of the files were located in the unallocated space on the laptop. Furthermore, the forensic analysis revealed that the Defendant had CCleaner installed on this laptop. CCleaner is a program which is marketed as "protecting users privacy" by deleting browsing history and temporary internet files, which allows an individual "to be a more confident internet user."

## APPLICABLE LEGAL STANDARD

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence. A crime of violence is defined to include "any felony under chapter….110." 18 U.S.C. § 3156(a)(4)(C).

The crime of Receipt of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(2), is a crime of violence and involving a minor victim, which under 18 U.S.C. § 3142(e)(2) & (3)(E) creates a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant does not pose a flight risk, danger to the community by itself is sufficient reason to order pretrial detention.  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in §

3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the government submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

### A. Nature and Circumstances of the Charged Offense

This factor clearly favors detention, since the Defendant's criminal conduct is ongoing and egregious. The Defendant spent hours each day, while at work over a nine-month period, searching for, accessing, viewing and receiving violent, graphic, images of young children being sexually assaulted. Every one of the children depicted in the images and videos found on the Defendant's Android Device and his personal laptop were victimized in the worst way imaginable at the time the images were created, and they are revictimized and retraumatized each and every time an individual, like the Defendant, views the images for their own sexual gratification. By his own admission, the Defendant's behavior has become an addiction, which has gotten worse over time. As recently explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from

10

>persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
>…every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Given the facts as alleged above, any conditions imposed on the Defendant's release are insufficient for several reasons.  First, confinement at the home he shares with his wife is essentially the same as detaining the Defendant in one of the very locations where he committed his crimes, with impunity, for months.  It would be akin to confining an individual who is accused of robbing a bank to the victim bank, and hoping that he would not be tempted to repeat his offense.  The Defendant's history and methodology of committing his offenses, presumably right under his wife's nose, should give the Court grave pause when considering whether or not Ms. Peksa has the sufficient ability to monitor the Defendant's compliance with his conditions of release.  Second, as the evidence uncovered during the course of this investigation has shown, the Defendant needs only a hand-held device to continue his pattern of accessing, viewing and receiving child pornography.  Currently, it is the Government's understanding that there is no way to verify the absence of such small devices at the Defendant's residence with any consistency, nor is there a way to monitor the Defendant's internet access.  This poses another large obstacle to releasing the Defendant, as his compliance with the Court's instructions that he

not access the internet, nor commit any additional criminal offenses, simply cannot be reliably ensured.  Third, as stated above, the Defendant has shown some sophistication and the employment of techniques to hide the evidence of his offenses, which would make monitoring his compliance on release extremely challenging.  As the risk of re-offending appears grave, and the fact that the Defendant's victims are vulnerable children, any proposed release conditions fail to properly ensure the safety of the community and thus, the Defendant should be detained.

### B. The Weight of the Evidence Against the Defendant

As summarized above, the evidence against the Defendant is overwhelming.  The log records documenting the Defendant's persistent quest to view images and videos depicting the sexual abuse of children is staggering.  Such access is tied directly to a phone the Defendant owned, and was verified by surveillance and badge entry logs.  Additionally, it is corroborated by the forensic evidence found on the Defendant's Android Device and laptop computer.  Finally, the Defendant's admitted his conduct, after being advised of his *Miranda* rights.  Therefore, the weight of the evidence strongly favors detention.

### C. The History and Characteristics of the Defendant

The Government acknowledges that the Defendant has no apparent criminal history.  However, as detailed above, the Defendant's conduct did not constitute a one-time lapse in judgement.  Rather, it is clear that the Defendant has been engaging in the online sexual exploitation of children, actively and in an addictive fashion, for nearly a year.  Furthermore, during the course of the investigation, the Government has interviewed a witness who saw child pornography on the Defendant's home computer, depicting children as young as infants and toddlers, when the witness resided with the Defendant between 2000-2004.  When confronted about the images, the Defendant informed the witness that a "friend sent it to me as a joke."

It's clear that the Defendant's ongoing course of criminal conduct is the true measure of his character. He has been placed on administrative leave from his job, and may well be terminated as a result of the instant case. The Defendant's history and characteristics should leave the Court with no confidence that he will not reoffend if not detained. Therefore, despite a lack of criminal history, this factor weighs in favor of detention, as well.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

The evidence here establishes that the defendant represents a grave danger to the community. As mentioned above, the receipt and possession of child pornography presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless victims depicted in the images the Defendant actively sought out for months. The Defendant, as a prolific consumer of this material, furthers the demand for new material depicting the graphic, sexual exploitation and abuse of defenseless children. It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, New York v. Ferber, 458 U.S. 747 (1982), the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions");

Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

...the issue is not only defendant's potential
abuse of children and his interaction with children
if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, Defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

For these reasons, it is clear that the Defendant poses a significant danger to the community and, given this risks, there are no condition or combination of conditions that will

reasonable keep the community safe if the Defendant is released. As such, this factor weighs heavily in favor of detention.

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the Defendant should be detained pending trial.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY


\_\_/s/_____
Amy E. Larson
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W.,
Washington, D.C. 20530
202-252-7863
Amy.Larson2@usdoj.gov